UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| LORENZO CARDENAS PEREZ, § <br> "Petitioner," § <br> § <br> v. § <br> § <br> KRISTI NOEM, Secretary of the United § <br> States Department of Homeland Security, et § <br> al., § <br> "Respondents." § <br> § | Civil Action No. 1:25-cv-00181 |

## ORDER

Before the Court is Petitioner's "Application for Emergency Temporary Restraining Order and Preliminary Injunction" (Dkt. No. 8) ("TRO"). To preserve the status quo while offering the chance for further briefing, Petitioner's TRO is **GRANTED in part and DENIED in part.**

### I. BACKGROUND

After three decades of living in the Rio Grande Valley, Petitioner was arrested by immigration officials on August 2, 2025. Dkt. No. 5 at 1. Since then, Petitioner has been detained by Respondents at the Port Isabel Service Processing Center in Port Isabel, *id.* at 5, and the Rio Grande Processing Center in Laredo. Dkt. No. 9 at 1. On August 14, 2025, an Immigration Judge ("IJ") ordered Petitioner released from custody on bond. Dkt No. 5 at 2; Dkt. No. 5-4 at 2. The Department of Homeland Security ("DHS") appealed the IJ's determination to the Board of Immigration Appeals, Dkt. No. 5-1. In doing so, DHS triggered an automatic stay on the IJ's order pursuant to 8 C.F.R. § 1003.19(i)(2), which authorizes an automatic stay on an IJ's order for release where "DHS has determined that an alien should not be released" and has filed a "notice of intent to appeal the custody redetermination." 8 C.F.R. § 1003.19(i)(2).

On August 19, 2025, Petitioner filed a writ of habeas corpus requesting his release under 8 U.S.C. § 2241. Dkts. No. 1 & 5. In his petition, he argues that 8 C.F.R. § 1003.19(i)(2) violates both the Fifth Amendment of the United States Constitution and 8 U.S.C. § 1226(a). Dkt. No. 5 at 12, 13. On August 23, 2025, Petitioner filed his TRO, asking the Court to 1) enjoin Respondents from transferring him outside the Port Isabel detention facility and 2) enjoin Respondents from

using the automatic stay provisions of 8 C.F.R. § 1003.19(i)(2) pending a final resolution of his writ. Dkt. No. 8 at 21.

## II. LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than if it is granted; and (4) that a temporary restraining order will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

In assessing whether a civil detention violates a petitioner's due process rights under the Fifth Amendment, courts apply the three-part test in *Mathews v. Eldridge*, 424 US 319 (1976), weighing the (1) "the private interest" affected by the government's action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value…of additional or substitute procedural safeguards"; and (3) the government's interest, including in bearing administrative costs. *Mathews*, 424 US at 335.

Challenging an agency's regulation as ultra vires "generally requires proof that an agency exceeded the bounds of its statutory authority. An agency acts ultra vires when it 'go[es] beyond what Congress has permitted it to do.'" *Chapa v. Bondi*, 132 F.4th 796, 798 (5th Cir. 2025) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 297–98 (2013)).

## III. DISCUSSION

The Court notes that Petitioner's request to prevent his transfer outside the Port Isabel detention facility is unavailing: Petitioner has been moved outside of this facility, Dkt. No. 9 at 1, and Petitioner's TRO offers no legal basis for the Court to exercise that power. Dkt. No. 8.

Petitioner's request to enjoin Respondents from using 8 C.F.R. § 1003.19(i)(2), however, merits emergency relief.

First, there is a substantial likelihood of success on the merits of his habeas petition on at least one of his theories. 8 C.F.R. § 1003.19(i)(2) is likely ultra vires in that it allows DHS to unilaterally stay an IJ's order of release on bond and thus interferes with the Attorney General's— and thereby an IJ's—statutory power to "release [an] alien on…bond." 8 U.S.C. § 1226(a)(2); *see, e.g.*, *Jacinto v. Trump*, 4:25CV3161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025) (finding 8 C.F.R. § 1003.19(i)(2) ultra vires).

The automatic stay regulation also likely violates due process under *Mathews*. Petitioner has a great private liberty interest burdened by his detention. DHS's automatic stay on the IJ's order risks erroneous deprivation because it does not have to be explained and is used despite Petitioner prevailing at his hearing before the IJ. Respondents have a legal alternative option: DHS can still seek to stay the IJ's order of release from the Board of Immigration Appeals "at any time." 8 C.F.R. § 1003.19(i)(1). While Respondents have some administrative burden in seeking a stay through that process, this interest does not outweigh the erroneous deprivation the automatic stay has inflicted on Petitioner.

The other factors for emergency relief also weigh in favor of Petitioner. Petitioner would continue to suffer irreparable harm from continued detention, which has both restricted his physical liberty and isolated him from his loved ones. *See* Dkt. No 8 at 19. The balance of equities and public interest also favor Petitioner. Petitioner is requesting not immediate release but for Respondents to cease using a potentially unlawful regulation to keep him detained. Dkt. No. 8 at 21. Because Respondents can still seek to stay his release by seeking appeal with the Board of Immigration Appeals, Respondents can plausibly maintain the status quo. And while Respondents have a chance to keep Petitioner detained, Petitioner could enjoy temporary relief from one problematic justification of his detention while the Court can assess the legality of the 8 C.F.R. § 1003.19(i)(2) automatic stay provision.

With these equities in mind, the Court has determined that its remedy should be designed to offer emergency relief, maintain the status quo pending a preliminary injunction, and offer the parties a chance to properly brief the Court on the relevant legal issues. The Court encourages Respondents to seek a discretionary stay from the Board of Immigration Appeals, which would render as moot Respondents using 8 C.F.R. § 1003.19(i)(2) to stay the IJ's order of release on bond.

### IV.    CONCLUSION

For these reasons, it is hereby **ORDERED** as follows:

Petitioner's TRO (Dkt. No. 8) is **GRANTED** in part and **DENIED** in part.

Petitioner's request to enjoin Respondents from transferring him from Port Isabel is **DENIED** as moot. Petitioner's request to enjoin Respondents from enforcing 8 C.F.R. § 1003.19(i)(2) is **GRANTED, but Petitioner will remain in custody for the duration of this TRO at the Rio Grande Processing Center in Laredo, TX.**

Respondents are enjoined from enforcing the automatic stay provisions of 8 C.F.R. § 1003.19(i)(2) without an Order from this Court.

This Temporary Restraining Order shall expire at 5:00 p.m. CST September 9, 2025, or by Order of the Court

Petitioner and Respondents shall attend a telephonic status conference with the Court on September 3, 2025, at 10 a.m. CST.[1]

Signed on this 26th day of August 2025.

Rolando Olvera
United States District Judge

---

[1] While a brief from Respondents is at this point discretionary, it will be required for any future Preliminary Injunction hearing.